**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| K.S.M.,<br><br>Plaintiff,<br><br>v.<br><br>Joseph E. KERNAN, Director of USCIS Asylum Vetting Center;<br><br>Davis PETERSON, Director of Newark Asylum Office;<br><br>Mathew VARGHESE, Director of Bethpage Asylum Office;<br><br>LaDeon FRANCIS, Acting Director of New York Field Office of U.S. Immigration and Customs Enforcement;<br><br>Kristi NOEM, Secretary of the U.S. Department of Homeland Security; and<br><br>Pamela BONDI, Attorney General of the U.S.<br><br>in their official capacities,<br><br>Defendants. | Civil Action No.1:26-cv-00406<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## PRELIMINARY STATEMENT

Plaintiff K.S.M.[1] is a mother to three and fled Honduras with her daughters in 2014. When they entered the United States seeking asylum, the Defendants initiated but never completed the process of placing her into removal proceedings, which led her to apply for asylum affirmatively. She obtained employment authorization based on her pending asylum

[1] Plaintiff contemporaneously files a motion for permission to proceed by initials.

application and waited for an interview notice, building a life in the Bronx and now New York, New York in the interim.

Defendants have now—many years later—illegally dismissed her asylum application and are purporting to subject her to an expedited removal process. She has been ordered to appear in Immigration and Customs Enforcement's offices on January 21, 2026, for a credible fear interview. She respectfully requests that the Court order Defendants to reinstate her asylum application and enjoin Defendants from taking enforcement action against her until the asylum application is properly adjudicated.

**JURISDICTION**

1. This Court has subject matter jurisdiction under 8 U.S.C. § 1331 (federal question). This action arises under the Constitution of the United States, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. This Court may grant declaratory, injunctive, and other relief pursuant to 28 U.S.C. § 2201 *et. seq.* and 5 U.S.C. § 701 *et seq.*

**VENUE**

2. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Plaintiff is a resident of this judicial district, Defendants are employees or officers of the United States sued in their official capacity, and no real property is involved in this action.

**PARTIES**

3. Plaintiff K.S.M. is a native and citizen of Honduras who fled her country and sought protection in the United States. She lives in New York, New York.

4. Defendant Joseph E. Kernan is the Director of the U.S. Citizenship and Immigration Services ("USCIS") Asylum Vetting Center in Atlanta, Georgia. Kernan is

responsible for overseeing the operation of that office and is named in his official capacity. He signed the letter purporting to dismiss Plaintiff's asylum application.

5. Defendant Davis Peterson is the Director of the USCIS Newark Asylum Office. Peterson is responsible for ensuring the timely and adequate adjudication of asylum applications submitted to the USCIS Newark Asylum Office and is named in his official capacity. Plaintiff's asylum application was pending with his office before its dismissal.

6. Defendant Mathew Varghese is the Director of the Bethpage Asylum Office. Varghese is responsible for ensuring the proper adjudication of credible fear interviews and is named in his official capacity. Plaintiff's notice of credible fear interview was mailed by his office.

7. Defendant LaDeon Francis is the Acting Director of the New York Field Office of Immigration and Custom Enforcement's ("ICE") Enforcement and Removal Operations division. He is responsible for day-to-day operations of ICE and the administration and enforcement of immigration law and is named in his official capacity. Plaintiff has been ordered to appear to his office.

8. Defendant Kristi Noem is the Secretary of the United States Department of Homeland Security ("DHS"). She is responsible for the implementation and enforcement of immigration laws, overseeing USCIS, ICE, and Customs and Border Protection ("CBP"), and is named in her official capacity.

9. Defendant Pamela Bondi is the Attorney General of the United States. She is responsible for the Department of Justice ("DOJ"), of which the Executive Office for Immigration Review ("EOIR") operates as a component agency, and is named in her official capacity.

## LEGAL FRAMEWORK

### ASYLUM

10. “Any [noncitizen] who is physically present in the United States or who arrives in the United States…may apply for asylum.” 8 U.S.C. § 1158(a)(1).

11. To receive asylum, a noncitizen must establish that she meets the definition of a “refugee,” within the meaning of 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(b)(1)(B)(i). The term “refugee” means (a) any person who is outside any country of such person’s nationality; (b) who is unable or unwilling to return to, and is unable or unwilling to avail themself of the protection of that country; (c) because of persecution or a well-founded fear of persecution; (d) on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A).

12. Congress required Defendants to establish an asylum application process. 8 U.S.C. § 1158(d)(1) (“The Attorney General shall establish a procedure for the consideration of asylum applications…”). In the absence of exceptional circumstances, an interview or hearing on the application must occur within 45 days of filing and final adjudication must occur within 180 days of filing. 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii).

13. Regulations split responsibility for adjudicating asylum applications between USCIS, which is part of DHS, and EOIR, which includes the immigration courts. If a noncitizen has not been placed in removal proceedings with the immigration court by DHS, then they may only file an application with USCIS. *See* 8 C.F.R. § 208.2(a)(1).

14. At USCIS the applicant receives a non-adversarial interview before an asylum officer, and the application is either granted or not. If the application is not granted, in most

circumstances, the noncitizen will be "referred" to removal proceedings before the immigration court for *de novo* adjudication of the application. 8 C.F.R. § 208.14.

15. Regulations require USCIS to adjudicate all complete asylum applications that are within the agency's jurisdiction. Under 8 C.F.R. § 208.9(a), "USCIS *shall* adjudicate the claim of each asylum applicant whose application is complete within the meaning of [8 C.F.R.] § 208.3(a)(2) or (c)(3), when applicable, and is within the jurisdiction of USCIS pursuant to [8 C.F.R.] § 208.2(a)." (emphasis added).

16. Noncitizens already in removal proceedings must file their asylum applications with the immigration court. 8 C.F.R. § 208.2(b). DHS has discretion to initiate immigration court proceedings against a removable noncitizen by filing a charging document, usually a Form I-862, Notice to Appear ("NTA"), with the immigration court. *See* 8 U.S.C. § 1229a. Jurisdiction vests, and proceedings before an immigration judge commence, only when DHS properly files a charging document with the immigration court. 8 C.F.R. § 1003.14(a). After immigration court proceedings are initiated, the immigration court has exclusive jurisdiction over the asylum application.

17. Irrespective of whether an asylum application is pending with USCIS or EOIR, most asylum seekers whose applications have been pending for more than 150 days are eligible to file for employment authorization. 8 C.F.R. § 208.7(a)(1). Such authorization is renewable. 8 C.F.R. § 208.7(b).

18. Once an asylum application is granted, asylum status is valid indefinitely unless actively terminated. 8 U.S.C. § 1158(c)(B). After one year of presence in the United States in asylum status, most asylees are eligible to file for lawful permanent residence. 8 U.S.C. § 1159(b), 8 C.F.R. § 209.2.

## EXPEDITED REMOVAL

19. The expedited removal process is, as its name implies, a vastly accelerated process that is applied to noncitizens who have recently arrived in the United States without a valid visa or other permission to enter. *See* 8 U.S.C. § 1225(b)(1).

20. If the noncitizen subject to expedited removal does not express fear of removal to their home country, the inspecting officer orders the noncitizen removed. 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(2)(i). While the inspecting officer must follow certain procedures required by regulation, the noncitizen has no right to a hearing before an immigration judge for review of that order. 8 C.F.R. § 235.3(b)(1)(ii), (2)(i)-(ii).

21. If the noncitizen expresses a fear of removal, however, the inspecting officer shall not proceed further with expedited removal and shall refer the person for an interview by an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. §§ 235.3(b)(4), 208.30(b).

22. The asylum officer must conduct a credible fear interview ("CFI") within a reasonable period. While the statute does not provide a precise deadline, longstanding USCIS policy has set a benchmark of conducting CFIs within 10 working days of referral. The Defendants specifically committed to this timeframe to resolve *Padilla v. ICE*, which ended with a class action settlement in which ICE agreed to refer individuals for CFIs within 10 days of expressing fear of return, and to providing access to legal resources during this period. *Padilla v. ICE*, No. 2:18-cv-928 (MJP) (W.D. Wash. Jan. 5, 2024).

23. If the asylum officer determines the person has a credible fear of persecution, the person is referred to the immigration court for removal proceedings under 8 U.S.C. § 1229a. 8 C.F.R. § 208.30(f). In this situation, the immigration court has exclusive jurisdiction over an application for asylum.

24. If the asylum officer determines the person has not established a credible fear of persecution, the noncitizen may request an immigration judge review the negative credible fear determination. 8 U.S.C. § 1225(b)(1)(B)(iii)(III). If the noncitizen does not request review by the immigration judge, or if the immigration judge upholds the negative credible fear determination, the individual will be removed. 8 U.S.C. § 1225(b)(1)(B)(iii)(I). There is no judicial review of negative credible fear determinations. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 116-17 (2020).

25. This lack of judicial review is additionally meaningful given recent changes to asylum law, since the credible fear standard is rooted in demonstrating a "significant possibility" of eligibility for asylum. 8 C.F.R. § 208.30(e)(2). While others would have the opportunity to challenge asylum directives issued by the Board of Immigration Appeals or Attorney General through the process of petitioning for review in a Circuit Court of Appeals, *see* 8 U.S.C. § 1252, those who fail credible fear do not have the opportunity to challenge how such governing law impacted their credible fear determinations. Examples of recent controversial changes to asylum law, including because they dramatically overruled prior precedent, include *Matter of S-S-F-M-*, 29 I&N Dec. 207 (A.G. 2025) (gender-based claims) and *Matter of R-E-R-M- & J-D-R-M-,* 29 I&N Dec. 202 (A.G. 2025) (family/kinship tie claims).

26. The expedited removal process must commence within two years of a noncitizen's entry into the United States. 8 U.S.C. § 1225(b)(1)(iii)(II); 8 C.F.R. § 235.3(b)(1)(ii). Traditionally, DHS has only applied this procedure to persons within 100 miles of the U.S. border who had been in the country less than 14 days, although that policy was discarded early last year. *See* U.S. Dep't of Homeland Sec., *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025). This policy reversal was promptly

challenged. *See CHILRA v. Noem*, No. 25-cv-872 (JMC) (D.D.C. Aug. 1, 2025) (staying DHS's expansion of expedited removal as exceeding statutory authority and arbitrary and capricious); *Make the Road New York v. Noem*, No. 25-cv-190 (JMC) (D.D.C. Aug. 29, 2025) (stayed on due process grounds).

27. For those who properly fall within expedited removal's ambit, DHS has a choice. DHS can *either* place them into expedited removal pursuant to 8 U.S.C. § 1225(b)(1) *or* place them into full removal proceedings under 8 U.S.C. § 1229a. *See Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520, 523 (BIA 2011) (holding that "DHS has discretion to put [noncitizens] in [8 U.S.C. § 1229a] removal proceedings even though they may also be subject to expedited removal under [8 U.S.C. § 1225(b)(1)(A)(i)]"); *Matter of Cabrera-Fernandez*, 28 I&N Dec. 747, 748 (BIA 2023). Historically, DHS has regularly exercised this option to place individuals into full removal proceedings.

28. Another option DHS may exercise is to "parole" a noncitizen into the United States. 8 U.S.C. § 1225(b). This allows the noncitizen to physically enter for a set period of time, but is not an "admission." Those who are paroled cannot be subject to expedited removal. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II); *CHIRLA v. Noem*, 1:25-cv-00872-JMC (ECF 41) (D.D.C. Aug. 1, 2025) (staying agency action instructing application of expedited removal to those who had been paroled); *Doe v. Noem*, 778 F.Supp.3d 311, 336-337 (D. Mass. Apr. 14, 2025) (finding that parolees are not subject to expedited removal under 8 U.S.C. § 1225(b)(1) even if they have been present in the U.S. for less than two years).

**EXPEDITED REMOVAL ORDERS**

29. Pursuant to 8 C.F.R. § 235.3(b)(2)(i), before a noncitizen may be removed under the expedited removal process, DHS must follow a particular procedure culminating in a

properly prepared and served Form I-860, Notice and Order of Expedited Removal ("Form I-860").

30. The regulation mandates that "[i]n every case in which the expedited removal provisions will be applied and before removing a[] [noncitizen] from the United States pursuant to this section, the examining immigration officer shall create a record of the facts of the case and statements made by the [noncitizen]." 8 C.F.R. § 235.3(b)(2)(i). This record must be created using Form I-867AB, titled Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Immigration and Nationality Act. *Id.*

31. The regulation further requires the examining officer to read to the noncitizen all information contained on Form I-867A. *Id.* The officer must record the noncitizen's responses to standard questions contained on Form I-867B. *Id.* The noncitizen must then be given the opportunity to review the recorded statement, and is required to sign and initial each page, including any corrections. *Id.* Additionally, the officer must inform the noncitizen of the charges against them using Form I-860. *Id.* The noncitizen must be given an opportunity to respond to those charges as part of the sworn statement process. 8 C.F.R. § 235.3(b)(2)(i).

32. Following supervisory review and concurrence under 8 C.F.R. § 235.3(b)(7), the examining immigration official shall serve the noncitizen with Form I-860 and the noncitizen shall sign the reverse of the form acknowledging receipt. 8 C.F.R. § 235.3(b)(2)(i).

33. These requirements form the core procedural protections that must be satisfied before an expedited removal order can take legal effect. A failure to complete and serve the Form I-860 in accordance with these requirements renders the order procedurally deficient and legally invalid.

## DETENTION

34. The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings. Such civil detention is authorized for specific, non-punitive purposes. *See Denmore v. Kim*, 538 U.S. 510, 528 (2003); *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001); *Jennings v. Rodriguez*, 138 S.Ct. 830, 833 (2018).

35. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an immigration judge. *See* 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c). The same line delineates ICE's authority to set its own bond and release prior to immigration judge review. 8 C.F.R. § 236.1.

36. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals referred to under § 1225(b)(2). The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

37. Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

38. Those subjected to expedited removal are subject to mandatory detention under 8 U.S.C. § 1225(b)(1) and can only be released by DHS through parole under

8 U.S.C. § 1182(d)(5). In contrast, those in removal proceedings pursuant to 8 U.S.C. § 1229a may be detained under 8 U.S.C. § 1226(a) and if so, may be eligible for release by DHS on their own recognizance or bond.

39. On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

40. The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission,"[2] claims that all persons who entered the United States without inspection shall now be subject to the mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended, and affects those who have resided in the United States for months, years, and even decades.

41. On September 5, 2025, the Board adopted this same position in a published decision, *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025). There, the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for immigration judge bond hearings.

42. Since Defendants adopted their new policies, dozens of federal courts have rejected their new interpretation of the INA's detention authorities. Courts have likewise rejected *Matter of Yajure Hurtado*, which adopts the same reading of the statute as ICE.

43. ICE agents have been detaining individuals appearing for routine immigration or court appointments without any pre-detention hearing. These arrests and detentions have occurred across the country, including at credible fear interviews, marriage-based immigration interviews, ICE check-ins and in courthouses. 26 Federal Plaza, New York, NY 10278 is the

---

[2] *Available at* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

epicenter for such detentions in the New York City area. *See, e.g., Lopez Benitez v. Francis,* 795 F.Supp.3d 475 (S.D.N.Y. Aug. 13, 2025).

**PLAINTIFF'S FACTS**

44. Plaintiff K.S.M. is a native and citizen of Honduras. She left Honduras, together with her three daughters, fleeing an abusive ex-partner and his connections through the MS-13 gang, as well as the treatment she received and feared as a Black, Afro-Indigenous member of the Garifuna community.

45. On April 24, 2014, K.S.M. and her daughters entered the United States. They turned themselves into CBP and requested asylum.

46. K.S.M. was interviewed by CBP and transferred to ICE custody. On April 25, 2014, ICE served her with a warrant for her arrest pursuant to 8 U.S.C. § 1226, a NTA for removal proceedings pursuant to 8 U.S.C. § 1229a, and an Order of Release on Recognizance ("ROR") pursuant to 8 U.S.C. § 1226(a). *See* Exhs. C-E to Nystedt Decl.

47. K.S.M. continues to comply with the ROR, in recent years having only been ordered to check-in with ICE once annually.

48. To date, ICE has yet to file the NTA issued on April 25, 2014, with the immigration court.

49. As ICE had yet to file the NTA, K.S.M. applied for asylum affirmatively with USCIS. On October 6, 2016, the Newark Asylum Office acknowledged that her application was complete. *See* Exhs. A-B to Nystedt Decl.

50. From 2016 until 2025, K.S.M.'s asylum application remained pending with the Newark Asylum Office. The Newark Asylum Office confirmed as much via direct communication on November 26, 2024. *See* Exh. G. to Nystedt Decl. K.S.M. obtained and

regularly renewed employment authorization based on her pending asylum application. *See* Exh. F to Nystedt Decl.

51. In the interim, K.S.M. built a life for herself and her family in the Bronx and later New York, New York. In July 2018, two of her daughters petitioned for U Nonimmigrant Status and included her as a derivative on those petitions. While both petitions remain pending, on December 4, 2024, USCIS decided that K.S.M. was entitled to deferred action and related employment authorization while she awaits final adjudication. *See* 8 U.S.C. § 1184(p)(6); 3 USCIS-PM C.5[3]. *See* Exh. H to Nystedt Decl. Such a grant involved a determination that she does not pose a risk to national security or public safety and is deserving in discretion. 3 USCIS-PM C.5(B). In response to K.S.M.'s deferred action, ICE confirmed that her next reporting would be on January 16, 2026, and via email.

52. On July 24, 2025, K.S.M. received notice that USCIS was dismissing her asylum application ("Dismissal Notice"). The dismissal notice was dated June 11, 2025, but not mailed until July 21, 2025. It was signed not by the Newark Asylum Office, which had overseen her application, but rather the USCIS Asylum Vetting Center in Atlanta, Georgia. *See* Exh. I to Nystedt Decl.

53. The dismissal notice stated that K.S.M. had been issued a Form I-860 and as such, USCIS had dismissed her asylum application as of June 11, 2025. She was to await a subsequent appointment notice for a CFI. The dismissal notice did not include a copy of the purported Form I-860. *Id.*

54. On January 10, 2026, K.S.M. received a credible fear interview notice ("Interview Notice"). The interview notice was dated December 19, 2025, but was not mailed until January

[3] *Available at* https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5.

8, 2026. It was mailed by the Bethpage Asylum Office, but directed appearance at ICE's offices at 26 Federal Plaza, New York, NY 10278 on January 21, 2026, at 7am. As a resident of Manhattan, the Bethpage Asylum Office does not have jurisdiction over K.S.M.'s asylum application. The interview notice also did not include a copy of the purported Form I-860. *See* Exh. J to Nystedt Decl.

55. On January 13, 2026, K.S.M. through counsel contacted USCIS and requested a copy of the purported Form I-860 as well as a rescheduling of the CFI. On January 14, 2026, USCIS responded: declining to reschedule the CFI and instructing K.S.M. to seek the purported Form I-860 by filing a Freedom of Information Act ("FOIA") request. *See* Exh. K to Nystedt Decl.

56. K.S.M. had in fact already filed a FOIA request for a copy of her complete A-File. An A-File is maintained by USCIS and is the complete record of any noncitizen's interactions with immigration and inspection processes. USCIS produced the responsive records on January 8, 2025—no Form I-860 was provided. *See* Exh. L to Nystedt Decl.

57. To date, Defendants have yet to provide K.S.M. with a copy of any Form I-860. If one exists, they omitted it from their production of records responsive to her FOIA request.

58. In contrast, Defendants provided K.S.M. with documents establishing an intention, but failure to execute, placement into removal proceedings over a decade ago. They also provided her with confirmation that her asylum application was complete and appropriately pending with USCIS, which was repeatedly reaffirmed until this challenged action. *See* Exhs. A, C-G, L to Nystedt Decl.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the INA (8 U.S.C. § 1158(a)(1))

59. Plaintiff incorporates the foregoing paragraphs by reference.

60. Defendants have a nondiscretionary duty to adjudicate Plaintiff's properly filed and complete asylum application. *See* 8 U.S.C. § 1158(a)(1); 8 C.F.R. § 208.9(a).

61. Plaintiff was never placed into expedited removal proceedings under 8 U.S.C. § 1235(b) because she was never served a proper Form I-860 and referred to USCIS for a credible fear interview within the expected 10-day window. *See* 8 C.F.R. §§ 235(b)(1)(ii), (2)(i), (4), (7) and 208.30.

62. Even if expedited removal proceedings were properly initiated, the fact of Plaintiff's release signifies that they ended. Had she been in expedited removal, Defendants would have needed to have either released her under 8 U.S.C. § 1226(a), alongside the initiation of removal proceedings pursuant to 8 U.S.C. § 1229a, or paroled her under 8 U.S.C. § 1182(d)(5). Either would have stopped any expedited removal process in its tracks. The only records Defendants served on Plaintiff reflect the former—the intention to place her into removal proceedings pursuant to 8 U.S.C. § 1229a and an actual release under 8 U.S.C. § 1226(a).

63. Plaintiff was not placed into removal proceedings under 8 U.S.C. § 1229a because ICE did not file the served NTA with EOIR.

64. Not in any removal process, Plaintiff appropriately filed her asylum application with USCIS.

65. USCIS's dismissal of her asylum application without adjudication violates the plain reading and purpose of 8 U.S.C. § 1158(a)(1) and the implementing regulations at 8 C.F.R. § 208.9.

**COUNT II**
**Violation of the Administrative Procedures Act, 5 U.S.C. § 706(1)**

66. Plaintiff incorporates the foregoing paragraphs by reference.

67. Under the APA a reviewing court "shall…compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

68. USCIS is obligated by statute and regulation to accept Plaintiff's properly filed, complete asylum application and adjudicate it. 8 U.S.C. § 1158(a)(1); 8 C.F.R. § 208.9(a).

69. Although the ultimate decision to grant asylum in an individual case involves a discretionary component, USCIS's duty to accept and adjudicate is not discretionary. *See* 8 U.S.C. § 1158(a)(1); 8 C.F.R. § 208.9(a).

70. By dismissing Plaintiff's asylum application based on a likely apocryphal, or, alternatively, non-enforceable Form I-860, USCIS acted in violation of its procedural and statutory obligations under the INA, implementing regulations, and the APA.

**COUNT III**
**Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A)**

71. Plaintiff incorporates the foregoing paragraphs by reference.

72. The Court is empowered to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

73. USCIS's dismissal of Plaintiff's asylum application constitutes agency action that is arbitrary, capricious, and contrary to law in violation of 5 U.S.C. § 706(2)(A).

74. USCIS acted arbitrarily, capriciously, and not in accordance with law when it ignored its nondiscretionary duty to adjudicate Plaintiff's asylum application.

75. By dismissing Plaintiff's asylum application based on a likely apocryphal, alternatively improperly prepared, and even if properly completed then no longer relevant Form I-860, USCIS has acted in violation of its procedural and statutory obligations under the INA, implementing regulations, and the APA.

**COUNT IV**
**Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(B)**

76. Plaintiff incorporates the foregoing paragraphs by reference.

77. The Court has power to invalidate agency action that is contrary to a constitutional right. 5 U.S.C. § 706(2)(B).

78. Defendants dismissed Plaintiff's asylum application based on improper grounds without prior notice and without providing Plaintiff with an opportunity to respond. These failures are a violation of Plaintiff's right to due process under the Fifth Amendment and should be set aside pursuant to the APA.

**COUNT V**
**Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(C)**

79. Plaintiff incorporates the foregoing paragraphs by reference.

80. The Court has power to invalidate agency action that is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. § 706(2)(C).

81. Defendants' dismissal of Plaintiff's asylum application is not in accordance with the statutes or Defendants' own regulation. *See* 8 U.S.C. § 1158(a)(1); 8 C.F.R. § 208.9(a).

82. Congress created the framework for applying for asylum in the United States. Defendants' decision to dismiss Plaintiff's asylum application violates congressional intent and impermissibly limits the statutory right created by Congress.

83. There are no other adequate remedies available to Plaintiff to obtain adjudication of her asylum application.

**COUNT VI**
**Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution**

84. Plaintiff incorporates the foregoing paragraphs by reference.

85. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall…be deprived of life, liberty, or property, without due process of law." This constitutional guarantee applies to all persons physically present in the United States, regardless of immigration status. *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001).

86. Plaintiff's right to be meaningly heard on her asylum application was violated when USCIS unlawfully dismissed it. She not only no longer has access to a non-adversarial asylum procedure before USCIS, and two bites at the apple if unsuccessful, but she is also entirely deprived of any asylum procedure.

87. Defendants have further violated Plaintiff's right to due process by dismissing her asylum application and refusing to issue her an NTA. Fewer rights are afforded to individuals in the credible fear interview process than in removal proceedings. *See Matter of E-R-M- & L-R-M-,* 25 I&N Dec. at 521 n.1 (noting that respondents in removal proceedings have "more rights available to them" than in expedited removal proceedings); *compare, e.g.* INA 240(b)(4),

8 C.F.R. §§ 1240.3, 1240.10(a), and 1003.1(b)(3) (rights in removal proceedings), with 8 C.F.R. §§ 1003.42(c), and 1208.30(g)(2)(iv)(A) (limited rights in credible fear process). Denied credible fear further notably does not come with a right to review by an Article III court.

88. Defendants also violated Plaintiff's rights by giving her no notice of intended dismissal before dismissing her asylum application, which would have provided the opportunity to contest and retain her ability to seek asylum through the legally required process.

**COUNT VII**
**Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution**

89. Plaintiff incorporates the foregoing paragraphs by reference.

90. The Fifth Amendment guarantees Plaintiff the right to not be subject to deprivation of liberty without due process of law. This includes the right to not be subject to wrongful detention.

91. Defendant's wrongful dismissal of Plaintiff's affirmative asylum application and subsequent placement in the expedited removal process puts Plaintiff at imminent near-certain risk of detention by ICE without due process.

92. Plaintiff has a substantial private interest in remaining out of custody having spent over a decade in the United States, including while cooperating with Defendants.

93. There is a significant risk that Plaintiff will be erroneously deprived of her liberty interest due to detention by ICE. Based on widespread media coverage and individual reports, ICE officers have been arresting individuals attending credible fear interviews and other routine appointments without any notice or pre-detention hearings affording justification or an opportunity to be heard.

94. For Plaintiff, any detention would be erroneous because the only valid statutory purposes of civil immigration detention are flight risk and danger to the community, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), neither of which apply to Plaintiff. In fact, Defendants determined she was not a flight risk or danger when they released her on her own recognizance in 2014 and nothing has changed to alter that fact.

95. Yet should ICE effectuate an arrest, it is Defendants' position that she is subject to mandatory detention whether she passes the credible fear interview or not.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Assume jurisdiction over this matter;

b. Declare that dismissal of Plaintiff's asylum application was unlawful;

c. Order USCIS to adjudicate Plaintiff's asylum application in accordance with the INA and implementing regulations at 8 C.F.R. § 208.9;

d. Enjoin DHS, including ICE, from detaining, subjecting to any form of removal proceeding, or removing Plaintiff until the asylum application is properly adjudicated;

e. Declare Plaintiff ineligible for expedited removal;

f. Award Plaintiff attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

g. Grant any further relief this Court deems just and proper.

DATED this 15th of January, 2026.
New York, NY

Respectfully Submitted,

By: /s/ Kendal Nystedt

Kendal Nystedt
UnLocal
45 W. 29th Street, Suite 203
New York, NY 10001
kendal@unlocal.org
646-240-4135
*Attorney for Plaintiff*